# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PRIORITY HEALTHCARE CORP., and**
**PRIORITY HEALTHCARE**
**DISTRIBUTION INC.,**

                 **Plaintiffs,**

-vs-                                                        **Case No.  6:08-cv-425-Orl-KRS**

**SURAJIT CHAUDHURI, M.D., P.A. ,**

_____

# ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO DISMISS COUNTS I, II, AND III OF DEFENDANT'S AMENDED COUNTERCLAIMS AND TO DISMISS DEFENDANT'S REQUEST FOR PUNITIVE DAMAGES (Doc. No. 21)** |
| **FILED:** | **May 27, 2008** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

## I. INTRODUCTION.

Defendant Surajit Chaudhuri, M.D., P.A. ("Chaudhuri P.A.") filed its Amended Answer, Affirmative Defenses and Counterclaim against both Plaintiffs, Priority Healthcare Corporation ("PHC") and Priority Healthcare Distribution, Inc. d/b/a Curascript SD ("Curascript").  Doc. No. 18. Plaintiffs have moved jointly to dismiss three counts of Chaudhuri P.A.'s counterclaim and to dismiss its claim for punitive damages.  Doc. Nos. 21, 22.  Chaudhuri P.A. opposes the motion.

**II.     ALLEGATIONS OF THE AMENDED COUNTERCLAIM.**

Chaudhuri P.A. is a hematology and oncology practice operated by Surajit Chaudhuri, M.D. Doc. No. 18 ¶ 1. Chaudhuri P.A. focuses on the detection, prevention and treatment of cancer. *Id.* ¶ 6. Chaudhuri P.A. has never screened or treated a patient for erectile dysfunction (ED) and has never prescribed medication for ED. *Id.*

In about July 2005, Dr. Chaudhuri met with one of Plaintiffs' representatives to discuss Chaudhuri's P.A.'s need for a supplier of oncology medications. After reviewing the materials provided by Plaintiffs' representative, Chaudhuri P.A. decided to enroll in Plaintiffs' oncology program. *Id.* ¶ 7. During the course of their business relationship, Chaudhuri P.A. signed the following documents: Matrix Oncology Administered by PBI Ortho-Biotech Agreement (Ortho-Biotech Agreement); PBI/Matrix Oncology Membership Form (Membership Form); Ready-to-Inject Agreement; and a Credit Application and Letter of Commitment and Authorization – Oncology (Credit Application). *Id.* ¶ 8.

The Ortho-Biotech Agreement indicates that participating partners, such as Chaudhuri P.A., agree to take part in Matrix Oncology Procrit market-share participation programs. This program permitted Chaudhuri P.A. to obtain a discount on specific oncology medications. *Id.* ¶ 9. In the Membership Form, Chaudhuri P.A. agreed that it would purchase drugs only for its use or the use of its patients, not for resale. *Id.* ¶ 10. PBI agreed to monitor and facilitate the arrangement between the vendor and the members. *Id.* ¶ 11. Finally, the Credit Application required Chaudhuri P.A. to notify Plaintiffs of any change related to the nature of its business. *Id.* ¶ 13.

Chaudhuri P.A. alleges that it never notified Plaintiffs that the nature of its practice had changed. *Id.* As such, Chaudhuri P.A. alleges that Plaintiffs grossly neglected their duty to monitor

and facilitate by allowing hundreds of thousands of dollars of ED drugs to be charged to its account when Plaintiffs knew that Chaudhuri P.A. would not use ED drugs and had not authorized Plaintiffs in writing to charge it for these medications.  *Id.* ¶¶ 11, 15.

Chaudhuri P.A. further alleges that it advised Plaintiffs of the purchasing contact person in its office.  It further alleges that Plaintiffs, therefore, knew not to accept orders from anyone other than the purchasing contact.  *Id.* ¶ 17.  It further alleges a complex scheme to defraud in which Ryan Smith, a former Sales Manager for Plaintiffs, induced LaTonya Murphy, a medical and clerical assistant for Chaudhuri P.A., to assist him in causing ED drugs to be sent to Murphy and charged to Chaudhuri P.A. in order for Smith to move inventory, meet his sales quotas and save his job.  *Id.* ¶ 21.  Chaudhuri P.A. further alleges that this scheme was carried out by Plaintiffs' failure to send invoices for ED drugs to the proper mailing address, *id.* ¶¶ 14, 22, failure of Plaintiffs' employee, Helena Spears, to tell Dr. Chaudhuri about the ED medications included in the invoices, *id.* ¶ 25, shipping the ED drugs directly to Murphy, *id.* ¶ 24, and billing to and accepting payment from Chaudhuri P.A. for ED drugs that Chaudhuri P.A. had not ordered or authorized Plaintiffs to send, *id.* ¶¶ 25.  Chaudhuri P.A. further alleges that Plaintiffs made false statements of material fact regarding the balances owed, upon which Chaudhuri P.A. relied.  *Id.* ¶¶ 46, 47.  As a result, Plaintiffs obtained $173,051.64 in unauthorized funds from Chaudhuri P.A.  *Id.* ¶ 35.

Finally, Chaudhuri P.A. alleges that in about August 2006, Dr. Chaudhuri realized that Chaudhuri P.A. was being charged for medications greatly in excess of the products ordered.  *Id.* ¶ 26.  In conjunction with Plaintiffs refusal to return to Chaudhuri P.A. the $173,051.64 paid for ED drugs, Spears told Dr. Chaudhuri that she did not have authority to apply those funds to Chaudhuri P.A.'s authorized purchases.  *Id.* ¶ 27.

**III.     STANDARD OF REVIEW.**

A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *see also Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986) (holding that the issue in a Rule 12(b)(6) motion to dismiss "is not whether [the plaintiff] will ultimately prevail on [his or her claim], but whether the allegations are sufficient to allow [the plaintiff] to conduct discovery in an attempt to prove the[ ] allegations."). A complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). This requires the plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1960.

**IV.     ANALYSIS.**

    **A.     Civil Theft.**

Plaintiffs argue that Chaudhuri P.A.'s claim for civil theft is insufficient because it does not allege any independent fault on behalf of PHC or CuraScript SD.[1] To prove a claim of civil theft, Chaudhuri P.A. must allege facts sufficient to show by clear and convincing evidence both the statutory elements of theft and criminal intent. *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th Dist.

---

[1] Neither Plaintiffs nor Chaudhuri P.A. adequately allege whether PHC and CuraScript SD should be considered to be the same entity for purposes of this case. Because the issue has not been raised, I will not address it *sua sponte*. This is a factual matter that must be resolved by stipulation or proof as the case progresses.

Ct. App. 2000).  A person commits theft if he (1) knowingly and unlawfully obtained funds from another; (2) with the intent to, either temporarily or permanently, deprive the owner of his use of the funds or deprive the owner of his right to the funds or any benefit from the funds.  See Fla. Stat. § 812.014(1); Florida Criminal Jury Instructions 14.1 (2002).  "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'" *Gersh*, 769 So. 2d at 409 (quoting *Trend Setter Villas v. Villas on the Green*, 569 So. 2d 766, 767 (Fla. 4th Dist Ct. App. 1990)).

The general rule in Florida is that an employer may be held vicariously liable for the tortious or criminal acts of its employee when the acts "are committed during the course of employment and to further a purpose or interest, however excessive or misguided, of the employer." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th Dist. Ct. App. 1985).  Further, the corporate employer of the perpetrator of a theft or conversion is vicariously liable for punitive damages or treble damages when "(a) the theft or conversion was committed by a managerial employee of the corporation within the scope of the latter's employment; or (b) the theft or conversion was committed by a non-managerial employee of the corporation within the scope of the latter's employment, provided further that the management of the corporation was guilty of some fault which foreseeably contributed to the plaintiff's injury." *McArthur Dairy, Inc. v. Original Kielbs, Inc.*, 481 So.2d 535, 540 (Fla. 3d Dist. Ct. App. 1986) (internal citations omitted).

In this case, Chaudhuri P.A.'s counterclaim pleads sufficient facts to establish vicarious liability for  Smith's actions.  Smith, a sales manager, developed an intricate scheme to defraud Chaudhuri P.A. by causing Plaintiffs to charge Chaudhuri P.A. for ED drugs not covered by Chaudhuri P.A.'s agreements and not used in its practice for the purpose of moving inventory (a

benefit to Plaintiffs) and to save his own job. Chaudhuri P.A. further alleges that Plaintiffs should have reasonably foreseen the fraud by virtue of the contractual duty to monitor and facilitate the arrangements between the vendor and Chaudhuri P.A. These allegations are sufficient to survive the motion to dismiss.

### B.     Conversion.

Plaintiffs argue that Chaudhuri's counterclaim for conversion fails to state a claim because there is no "specific and identifiable money" allegedly converted. Under Florida law, "[c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985) (internal quotations omitted). "The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation." *Id.* Thus, in order to prevail on a claim for conversion of money, a plaintiff must prove by a preponderance of the evidence: (1) a specific and identifiable sum of money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *E.g., United States v. Bailey,* 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003); *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th Dist. Ct. App. 1970).

Plaintiffs argue that a conversion claim can only survive if the money at issue is currently being held in a escrow or other separate account. However, in *All Cargo Transport, Inc. v. Florida East Coast Railway*, 355 So. 2d 178, 179 (Fla. 3d Dist. Ct. App. 1978), the Third District Court of Appeal held that "[i]t constitutes conversion for a creditor to apply . . . funds of the debtor in a way which is expressly contrary to the debtor's specific instructions and thereafter to refuse return of the funds upon the debtor's demand." Thus, wrongful retention of funds by Plaintiffs may constitute

conversion if Chaudhuri P.A. alleges that it gave specific instructions to Plaintiffs to only apply the payments to charges for oncology drugs.

While Chaudhuri P.A. argues that it alleged that Dr. Chaudhuri "provided his credit card number to specifically pay for oncology medications the Practice had ordered," doc. no 26 at 8, the allegations of the counterclaim do not support this argument. Rather, Chaudhuri P.A. alleged that Dr. Chaudhuri routinely provided a credit card number "to pay [its] monthly invoices," doc. no. 18 ¶ 20, and that Dr. Chaudhuri did not know that the invoices included charges for ED drugs, *id.* ¶¶ 20, 25. Accordingly, because the allegations of the counterclaim do not state a plausible basis under which Chaudhuri P.A. could prevail on its claim for conversion, the motion to dismiss that claim is well taken.

**C.    Fraud.**

Plaintiffs argue that Chaudhuri P.A.'s counterclaim fails to state a claim for fraud because it fails to state with specificity the what false statements were made. Fed. R. Civ. P. 9(b) provides as follows:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)(internal quotations marks omitted). A party satisfies Rule 9 if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id*. (internal quotation marks omitted). Rule 9, however, does not abrogate the concept of notice pleading. *Id*.

Chaudhuri P.A. alleges that Plaintiffs made knowingly false statements of material fact regarding balances allegedly owed for products Chaudhuri P.A. did not order, that Plaintiffs intended to induce Chaudhuri P.A. to pay for products it would not use, and that Chaudhuri P.A. justifiably relied on Plaintiffs misrepresentations and paid $173,051.64 for products it did not use. Doc. No. 18 ¶¶ 45-47. By reference, Chaudhuri P.A. incorporated the general allegations of the counterclaim. *Id*. ¶ 44. Reading all of the allegations together, I find that Chaudhuri P.A.'s counterclaim sufficiently identifies the fraudulent statements and material omissions upon which its claim is based.

### D. Punitive Damages.

Plaintiffs argue that Chaudhuri P.A. has not satisfied the pleading requirements of section 768.72, Florida Statutes, which is necessary to support a claim for punitive damages. The United States Court of Appeals for the Eleventh Circuit has held that section 768.72 is a procedural statute that does not apply to proceedings in federal court. *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), *modified on other grounds*, 204 F.3d 1069 (11th Cir. 2000). Accordingly, this portion of Plaintiffs' argument is not well taken.

Plaintiffs also argue that punitive damages are not available for promissory estoppel and unjust enrichment. With respect to the promissory estoppel claim, Plaintiffs argue that the law regarding

punitive damages in breach of contract cases should apply. It submits that in breach of contract cases, "exemplary damages are not recoverable unless the defendant's conduct constituting the breach of contract rises to the level of an independent tort showing actual malice, moral turpitude, wantonness or outrageousness." *Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1053 (Fla. 2d Dist. Ct. App. 2001).

The promissory estoppel claim in this case is based on the failure of Spears to tell Dr. Chaudhuri that ED drugs were included in the amounts due on the invoices. The counterclaim, however, does not allege that Spears had knowledge of Smith's scheme to defraud or was a co-conspirator in that scheme. Accordingly, the counterclaim is insufficient to support a claim for punitive damage under Count V.

Plaintiffs argue that punitive damages also are not available for unjust enrichment theory. Chaudhuri cites no authority that would permit punitive damages under this theory. Because unjust enrichment is not intended to be punitive, I find that punitive damages are not available under this theory. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th Dist. Ct. App. 2007).

## V. CONCLUSION.

For the reasons stated above, I **GRANT** Plaintiff's motion to dismiss Count II of the counterclaim for conversion and **DENY** the motion to dismiss Count I for civil theft and Count III for fraud. Further, I **STRIKE** the punitive damages claim from Count V for promissory estoppel and Count VI for unjust enrichment.

**DONE** and **ORDERED** in Orlando, Florida on October 1, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE